tion as indicated by the fact that it charged off an amount in 1917 which it considered sufficient for that year as well as for 1918.

The principle contended for by the Commissioner that a taxpayer has an option to take a deduction on account of the exhaustion of patents which must be exercised at the time of the filing of the original return, is not involved in this case for the reason that such rule, if it exists, can not apply to a situation in which the Commissioner by his own act of disallowance in one year has caused the taxpayer to make the claim in a subsequent year.

---

Appeal of **UTILITIES SERVICE CO.**          Docket No. 203.

> A corporation formed to act under power of attorney or otherwise as factor, agent, or broker for others for the purpose of exchanging contracts of indemnity against various kinds of liability on the reciprocal or interinsurance plan is not, where capital was a material income-producing factor or where only approximately 56 per cent of its stockholders were regularly engaged in the active conduct of its affairs, entitled to classification as a personal service corporation under the provisions of section 200 of the Revenue Act of 1918.

Submitted October 29, 1924; decided December 29, 1924.

*C. R. Abel, Esq.*, and *F. A. Smith, Esq.*, for the taxpayer.

*J. A. Adams, Esq.*, (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves income and profits taxes for the calender years 1918, 1919, and 1920. The Commissioner determined the tax liability of the taxpayer under the provisions of sections 230 and 301 of the Revenue Act of 1918, whereas the taxpayer contends that it was, during the years in question, a personal service corporation within the meaning of section 200.

FINDINGS OF FACT.

The taxpayer was a corporation engaged in the business of acting under power of attorney as agent or broker for individuals, firms, or corporations in exchanging contracts of indemnity against various kinds of liability on the reciprocal or interinsurance plan. It was organized in February, 1911, under the laws of the State of Missouri under the name of John S. Day Service Co., with a capital stock of $10,000 fully paid in cash. The name of the corporation was changed November 27, 1911, to the Utilities Service Co. Capital stock was increased April 26, 1912, to $15,000, the $5,000 increase being paid in cash. It was further increased May 5, 1916, to $50,000, the increase also being paid in cash. On July 23, 1917, the capital stock was again increased, the increase being $100,000, of which $75,000 was preferred stock issued for cash and $25,000 issued as a stock dividend. The corporation had capital stock outstanding of $150,000 for 1918, 1919, and 1920.

The following is a statement of the names of the stockholders who were regularly engaged in the active conduct of the affairs of the corporation and the amount of compensation they received:

|  | Number of shares owned, 1918. | Salary, | Number of shares owned, 1919. | Salary. |
|---|---|---|---|---|
| Lynton T. Block | 1,032 | $5,700.00 | 1,012 | $8,200.00 |
| O. W. Black | 83 | 2,100.00 | 83 | 2,100.00 |
| B. H. Batte | 52 | 3,425.00 | 51 | 3,900.00 |
| J. G. Owen | 70 | 3,766.65 | 70 | 4,500.00 |
| Bert Hoffman | 8 | 980.00 | 12 | 1,117.00 |
| Leslie D. Lassus | 1 | 675.00 | 1 | 1,071.00 |
| Roland Holtgrewe | 2 | 300.00 | 3 | 1,185.00 |
| Anna Greiner | 10 | 900.00 | 10 | None. |
| J. J. Nagle | | | 15 | 3,600.00 |
| A. E. Werner | | | 3 | 1,071.00 |
| H. H. Rhein | | | 6 | 1,260.00 |
| Phebe Murray | | | 2 | 1,008.00 |
| H. G. McKim | | | 5 | 2,300.00 |
| | 1,258 | 17,846.65 | 1,273 | 31,312.00 |

Stockholders who were not regularly engaged in the active conduct of the affairs of the corporation, who did not receive compensation from the taxpayer but served either as directors, members of advisory board, or claims attorney, were as follows:

|  | Number of shares owned, 1918. | Number of shares owned, 1919. |
|---|---|---|
| W. H. Bixby | 1 | 5 |
| J. J. Frey | 121 | 121 |
| P. O. Block | 82 | 82 |
| R. E. Moran | 15 | |
| D. G. Taylor | 275 | 275 |
| F. J. Postal | | 15 |
| | 494 | 498 |

Any service rendered by these stockholders was occasional or advisory. The amount of stock owned by this group was approximately 22 per cent of the total outstanding capital stock.

Stockholders who owned approximately 22 per cent of the total stock outstanding and who performed no service to the corporation were as follows:

|  | Number of shares owned, 1918. | Number of shares owned, 1919. |
|---|---|---|
| J. B. Coryell | 21 | 21 |
| W. K. Bixby | 449 | 417 |
| Bransford Lewis | 10 | 10 |
| O. L. Mathews | 5 | 5 |
| M. J. Wolf | 10 | 10 |
| G. P. Moran | | 15 |
| W. A. Greiner | 1 | 1 |
| A. O. Beimiek | 2 | |
| | 498 | 479 |

The following stockholders devoted their entire time to the business of the corporation and received compensation for their service for the year 1920:

| | Number of shares owned. | Salary. |
|---|---|---|
| Linton T. Block | 1,012 | $10,000 |
| O. W. Block | 83 | 2,100 |
| J. G. Owen | 90 | 5,400 |
| J. J. Nagle | 15 | 4,200 |
| H. G. McKim | 33 | 3,300 |
| | 1,233 | 25,000 |

The stockholders who were regularly engaged in the active conduct of the affairs of the corporation owned approximately 56 per cent of the total stock outstanding for each of the years 1918, 1919, and 1920.

The principal business of the taxpayer was to act as attorney-in-fact for subscribers at the Utilities Indemnity Exchange and the Utilities Fire Exchange, and to act as an insurance broker. At the Utilities Indemnity Exchange and the Utilities Fire Exchange individuals, firms, and corporations exchange contracts of indemnity against various kinds of liability, on the reciprocal or interinsurance plan, each subscriber making a deposit out of which his share of the underwriting losses and expenses is paid. In order to become subscribers at the exchange, the individual, firm, or corporation was required to execute a power of attorney to Lynton T. Block and to appoint the taxpayer substitute attorney with authority to appoint other substitute attorneys to act for and in the place of the subscriber in carrying out the exchange of indemnity.

The balance sheets of the taxpayer as at December 31, 1918, December 31, 1919, and December 31, 1920, are as follows:

| | Dec. 31, 1918. | Dec. 31, 1919. | Dec. 31, 1920. |
|---|---|---|---|
| **Assets:** | | | |
| Cash | $23,970.41 | $3,218.33 | $6,017.51 |
| Trade accounts and notes receivable | 31,089.72 | 26,728.08 | 56,988.26 |
| Loans to officers and employees | 1,228.85 | 866.82 | |
| Mortgages and securities | 67,700.00 | 71,950.00 | 900.00 |
| Insurance policy, surrender value | 1,502.50 | 2,378.55 | 4,631.40 |
| Furniture and fixtures | 9,486.79 | 12,552.81 | 17,831.40 |
| Automobiles | 4,200.00 | 4,381.00 | 1,827.41 |
| Purchased clientele cost | 16,861.77 | 16,861.77 | 16,861.77 |
| Stock in domestic corporation | | 105,660.00 | 105,660.00 |
| Improvement to leased property | | 302.90 | 1,920.67 |
| | 156,040.04 | 244,900.26 | 212,638.42 |
| **Liabilities:** | | | |
| Notes payable | 33,784.92 | 105,462.66 | 63,151.15 |
| Accounts payable | 6,363.62 | 8,031.26 | 20,017.67 |
| Reserve for depreciation | 2,756.29 | 4,041.86 | 6,017.07 |
| Reserve for bad debts | | 1,392.91 | 1,392.91 |
| Reserve for moving | | 1,900.00 | |
| Reserve for Federal taxes | | | 5,311.32 |
| Reserve for Government bonds | | 4,402.50 | |
| Capital stock | 150,000.00 | 150,000.00 | 150,000.00 |
| Surplus (deficit) | 36,864.79 | 30,330.93 | 33,251.70 |
| | 156,040.04 | 244,900.26 | 212,638.42 |

The following schedule shows the available capital invested and borrowed for use in the taxpayer's business for the years stated:

|  | Dec. 31, 1917. | Dec. 31, 1918. | Dec. 31, 1919. | Dec. 31, 1920. |
|---|---|---|---|---|
| Capital stock | $150,000.00 | $150,000.00 | $150,000.00 | $150,000.00 |
| Notes payable | 21,000.00 | 33,784.92 | 105,462.66 | 63,151.15 |
|  | 171,000.00 | 183,784.92 | 255,462.66 | 213,151.15 |
| Less deficit | 36,220.62 | 36,864.79 | 30,330.93 | 33,251.70 |
| Available capital | 134,779.38 | 146,920.13 | 225,131.73 | 179,899.45 |

One of the duties provided by the power of attorney agreement under which the corporation conducted the major portion of its business was to provide reinsurance. In order to do this the taxpayer established a fund consisting of assets, such as cash or securities that could easily be converted into cash, which were placed in escrow subject to the use of the members of the Indemnity Exchange in the event of excess losses. This fund amounted to $72,500, and gave the corporation financial security and ability to finance its customers.

The income and deductions for the three years were as follows:

|  | 1918 | 1919 | 1920 |
|---|---|---|---|
| **Income:** |  |  |  |
| Fees on exchange | $88,850.93 | $139,841.54 | $154,212.15 |
| Insurance brokerage | 10,743.31 | 23,610.69 | 47,659.52 |
| Adjusted fees | 9,439.27 | 13,497.88 | 14,363.26 |
| Fees on reinsurance | 13,221.87 | 23,651.72 | 25,781.68 |
| Accident insurance commission | 1,096.70 | 1,095.62 |  |
| Interest income | 2,769.84 | 5,898.68 | 1,379.71 |
|  | 126,121.92 | 207,596.13 | 243,396.49 |
| **Deductions:** |  |  |  |
| Salaries of stockholders | 17,846.65 | 31,312.00 | 25,000.00 |
| Other salaries | 26,337.25 | 43,216.21 | 84,044.52 |
| Traveling expenses | 4,366.41 | 5,418.06 | 6,310.39 |
| Claim department expenses | 12,108.11 | 20,909.60 | 25,528.26 |
| Sundry commissions | 4,321.15 | 10,503.10 | 23,421.36 |
| Auto expense | 4,561.91 | 7,503.80 |  |
| Reinsurance | | 9,875.00 | 13,500.00 |
| Bad debts | | 1,652.31 | |
| Advertising | 4,536.71 | 4,765.00 | 7,401.97 |
| Inspection expense | 3,241.50 | 2,376.64 | 755.77 |
| Legal expense | 5,939.35 | 1,804.07 | 1,520.94 |
| Depreciation | 948.68 | 1,285.57 | 1,975.27 |
| Interest and discount | 906.09 | 888.67 | 2,838.53 |
| Other expense | 21,633.55 | 33,722.80 | 39,907.44 |
|  | 106,647.36 | 176,132.83 | 232,204.45 |
| Total income | 126,121.92 | 207,596.13 | 243,396.49 |
| Total deductions | 106,647.36 | 176,132.83 | 232,204.45 |
| Total net income | 19,474.56 | 31,463.30 | 11,192.04 |

It was customary for the taxpayer to accept short time notes from a number of clients when premiums became due if it was inconvenient for them to pay in cash. Such were the notes receivable appearing on the balance sheets.

The paid in capital of the company less the amount of the deficit as it existed from time to time, and the borrowed money were regularly used in the taxpayer's business. It constituted a fund which was

the basis for credit when credit was needed and which enabled the corporation to enlarge its business activities, to obtain reinsurance more advantageously and to provide for losses in excess of amounts anticipated by insurance averages.

### DECISION.

The determination by the Commissioner of a deficiency in the amount of $207.25 for 1918, $1,993.22 for 1919, and $716.59 for 1920, is approved.

---

Appeal of **PATRICK C. HEAFEY ESTATE.**　　　Docket No. 71.

The Board is without jurisdiction to consider an appeal where the Commissioner has taken no action since June 2, 1924.

Submitted December 15, 1924; decided December 29, 1924.

J. F. W. Heinbockel, C. P. A., for the taxpayer.

*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

#### Before IVINS, KORNER, and MARQUETTE.

This appeal came on for hearing on the Commissioner's motion to dismiss on the ground that the petition did not set forth facts sufficient to confer jurisdiction upon the Board.

IVINS: It seems that the Commissioner assessed an additional tax against the taxpayer in 1923 and accepted a claim for abatement, final decision upon which has not been rendered.

The taxpayer's counsel claims that counsel for the Commissioner at a previous hearing before this Board exhibited to him a proposed recomputation of the tax and it is from this that the appeal is now taken. Such proposed recomputation has never been served upon the taxpayer formally, and no formal action appears to have been taken by the Commissioner and no formal notice of any kind served by him upon the taxpayer since the enactment of the Revenue Act of 1924. In these circumstances there is no jurisdictional fact upon which an appeal to this Board can be predicated. The motion must be granted, and the appeal dismissed.